**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Civil Action No. 0:23-cv-00367-JWB-ECW

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **CONSENT DECREE** |
| MINNESOTA DEPARTMENT OF CORRECTIONS, | |
| Defendant. | |

## I.   INTRODUCTION

1.     This Consent Decree resolves the above-captioned civil action brought by Plaintiff United States against the Minnesota Department of Corrections (Defendant or MNDOC) under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–34, as amended, and the Department of Justice's implementing regulation, 28 C.F.R. pt. 35.

2.     The United States of America brought this suit against the MNDOC based on complaints that the MNDOC unlawfully discriminates against incarcerated individuals with disabilities in its General Educational Development (GED) program.  The United States alleges that the MNDOC violates Title II of the ADA by denying individuals with disabilities an equal opportunity to benefit from its GED program and that the MNDOC fails to provide individuals with disabilities with necessary reasonable modifications during GED courses and practice tests, such as modified assignments and one-on-one assistance, and denies individuals with disabilities the opportunity to obtain

accommodations during GED exams.  The United States alleges that without these accommodations, incarcerated individuals repeatedly fail their GED practice tests and exams and remain for months or years in the GED program, unable to progress to other opportunities like college programs or higher-paying prison jobs.  The United States alleges incarcerated individuals with disabilities are thereby denied an equal opportunity to benefit from the MNDOC's GED program and subjected to discrimination in violation of the ADA.

3.     The United States and MNDOC (collectively, the Parties) agree that it is in the Parties' best interests, and the United States believes that it is in the public interest, to resolve this lawsuit on mutually agreeable terms.  Accordingly, in order to avoid additional cost and the uncertainty of litigation, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the United States' Complaint.

Accordingly, the Parties hereby enter into this Consent Decree and the Court hereby APPROVES, ENTERS, AND ORDERS the following:

## II.     <u>JURISDICTION AND VENUE</u>

4.     Plaintiff is the United States of America.

5.     Defendant MNDOC is a state agency that operates the State of Minnesota's prison system and provides correctional services, including educational services, to incarcerated individuals in Minnesota.  Defendant MNDOC is a "public entity" within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA and its implementing regulation.

6.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and Title II of the ADA, 42 U.S.C. § 12133.  The Parties agree that venue is proper in this district under 28 U.S.C. § 1391(b) because the claims alleged herein occurred in the District of Minnesota.

7.      The United States has authority to bring this action and seek remedies for violations of Title II of the ADA.  42 U.S.C. § 12133; 28 C.F.R. pt. 35, Subpart F.

8.      The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201–02 and 42 U.S.C. § 12133.

### III.      <u>GENERAL RELIEF</u>

9.      The MNDOC shall comply with the requirements of Title II of the ADA, 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. Part 35, by ensuring incarcerated individuals with disabilities are provided an equal opportunity to benefit from the MNDOC's GED program and are not subjected to discrimination in violation of the ADA.  The MNDOC shall not:

   a.  Deny qualified individuals with disabilities the benefits from its services, programs, or activities—including its GED program—or otherwise subject them to discrimination in violation of 42 U.S.C. § 12132;

   b.  Deny qualified individuals with disabilities an equal opportunity to participate in or benefit from its services, programs, or activities—including its GED program—in violation of 28 C.F.R. § 35.130(a)-(b)(1)(i)-(ii); and

   c.  Fail to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of

disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity in violation of 28 C.F.R. § 35.130(b)(7)(i).

## IV.   SPECIFIC INJUNCTIVE RELIEF

10.   <u>Policies, Practices & Procedures</u>: Within sixty (60) calendar days of the Effective Date of this Consent Decree, the MNDOC shall submit revised policies, practices, and procedures to the United States for its review and approval, which will not be unreasonably withheld, providing for the following:

    a.   <u>Nondiscrimination</u>:  The MNDOC shall not deny qualified individuals with disabilities equal opportunity to participate in or benefit from its secondary education program—including GED courses, practice tests, and exams—and otherwise subject them to discrimination.  The MNDOC shall not refuse to enroll, limit the participation of, penalize, or otherwise discriminate against individuals with disabilities in its secondary education program.

      i.   The MNDOC shall make reasonable modifications to its GED program for qualified individuals with disabilities.  Required modifications may include changes in the length of time permitted for completion, substitution of requirements of courses, or adaptation of the manner in which the course, practice test, or exam is conducted or materials are distributed.

     ii.   The MNDOC shall provide appropriate auxiliary aids and services for persons with impaired sensory, manual, or speaking skills in its GED

4

program, unless the MNDOC can demonstrate that offering a particular auxiliary aid or service would fundamentally alter the program or would result in an undue burden.

iii.  The MNDOC shall respond in a timely manner, and no later than five (5) working days, to requests for modifications, accommodations, or auxiliary aids or services in its GED program to ensure equal opportunity for individuals with disabilities.

iv.  The MNDOC shall properly evaluate requests for modifications, accommodations, auxiliary aids or services, or other disability-related needs of incarcerated individuals in connection with its GED program in accordance with Title II of the ADA, including conducting individualized assessments of such incarcerated individuals where indicated.  The MNDOC shall have staff who have been trained pursuant to Paragraph 13, following United States' approval of the training in Paragraph 13, conduct these individualized assessments.  Such assessments may include a review of relevant medical and mental health files and an in-person evaluation of the individual, and shall result in an individualized determination as to whether there are reasonable modifications, auxiliary aids or services, or accommodations necessary to ensure that the individual has an equal opportunity to participate in and benefit from the GED program.  If the individual's request is denied, the MNDOC shall inform the incarcerated individual that they may appeal that decision for

review by the ADA Compliance Officer, who must respond to the appeal within fifteen (15) working days of the appeal. The ADA Compliance Officer may grant or deny the individual's request. If the incarcerated individual's appeal involves a request for a reevaluation of a disability, the ADA Compliance Officer may approve or deny the individual's request. If approved, the ADA Compliance Officer or a Facility ADA Education Coordinator will conduct the reevaluation and may refer the incarcerated individual for new or updated medical or mental health testing if necessary. If new or updated medical or mental health testing is necessary, the individual shall be referred for such testing within thirty (30) calendar days of approval for reassessment.

v.   The MNDOC shall assure that any request for documentation from an individual with a disability in the GED program, if such documentation is required by the MNDOC, is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested.

vi.  The MNDOC shall assure that, when considering requests from individuals with disabilities in the GED program for modifications, accommodations, or auxiliary aids or services, the MNDOC gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education

6

Program (IEP) provided under the Individuals with Disabilities Education Act, a plan describing services provided pursuant to Section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan), or a similar educational learning plan. The MNDOC shall take meaningful steps to ascertain whether incarcerated individuals in the GED program previously received modifications, accommodations, or auxiliary aids or services as part of an IEP, Section 504 Plan, or similar educational learning plan.

vii. The MNDOC shall not prohibit, prevent, or otherwise hinder an incarcerated individual from seeking reasonable modifications or accommodations on the GED exam. The MNDOC shall provide necessary assistance so that the individual can submit such requests and supporting documentation to obtain modifications, accommodations, or auxiliary aids or services on the GED exam. The MNDOC shall assist such individuals in obtaining necessary supporting documentation from prior schools, medical professionals, presentence investigation reports, or other third-party sources. If an incarcerated individual seeking modifications, accommodations, or auxiliary aids or services on the GED exam does not have a current written education accommodation plan supporting such a request, the MNDOC shall have knowledgeable staff who have been trained pursuant to Paragraph 13, following United States' approval of the training in Paragraph 13, conduct individualized

assessments of individuals with disabilities as needed to support their request for modifications, accommodations, or auxiliary aids or services on the GED exam.  The MNDOC shall not prohibit, prevent, or otherwise hinder MNDOC staff or other individuals who assist incarcerated individuals with disabilities in seeking reasonable modifications or accommodations on the GED exam.

viii.   The MNDOC shall administer its GED program in facilities that are accessible to individuals with disabilities, or alternative accessible arrangements must be made.  Alternative arrangements must provide comparable conditions to those provided for nondisabled individuals.

ix.   The MNDOC must assure that the GED exam is administered so as to best ensure that, when the exam is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the exam results accurately reflect the individual's aptitude or achievement level or whatever other factor the exam purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills.

x.   The MNDOC shall ensure that all relevant information and documents about an individual's disability, accommodations, reasonable modifications, auxiliary aids or services, or other disability-related needs are accessible to secondary education program staff at the individual's facility, including when the individual transfers between MNDOC facilities.

    xi.   Pursuant to 28 C.F.R. § 35.130(h) and notwithstanding any other provision in the Consent Decree, the MNDOC may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities, so long as any such safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

  b.  <u>Notification for Individuals with Disabilities</u>:  The MNDOC shall inform all incarcerated individuals of the MNDOC's policies and procedures for reasonable modifications for individuals with disabilities upon intake screening and processing and orientation.  The MNDOC shall inform all incarcerated individuals upon their admission into any secondary education program of the MNDOC's policies and procedures for reasonable modifications for individuals with disabilities, examples of reasonable modifications available for individuals with disabilities in their specific secondary education program, and any relevant policies or procedures for obtaining such modifications from the MNDOC or third-party entities involved in reviewing requests for such modifications.  The MNDOC shall provide all incarcerated individuals in the GED program with notice that accommodations are available on GED practice tests and exams and the policies and procedures for requesting such accommodations.  Individuals in the GED program will be notified of these available accommodations again upon eligibility for a GED practice test or exam part.

c. <u>Allegations of Discrimination by Staff on the Basis of Disability</u>: The MNDOC shall take appropriate disciplinary or other action against staff who subject incarcerated individuals or other staff members or individuals assisting incarcerated individuals with disabilities in its secondary education program to discrimination, retaliation, coercion, intimidation, harassment, threats, or abuse, or who interfere with rights protected by the ADA, in accordance with applicable policies and collective bargaining agreements.

d. <u>Complaints and Appeals by Incarcerated Individuals</u>:  The MNDOC shall ensure that Offender Requests for Modifications, kites, complaints, grievances, and appeals by incarcerated individuals who allege violations of the ADA in a secondary education program are promptly reviewed and addressed by appropriate action.   For communications by incarcerated individuals in a secondary education program that are not related to a denial of an accommodation request, appropriate MNDOC staff shall promptly review and address such communications by appropriate action, pursuant to MNDOC policy.   Appeals by incarcerated individuals in a secondary education program that are related to a denial of an accommodation request, shall be promptly reviewed and addressed per Paragraph 10(a)(iv).  The deputy commissioner of the facilities services division or the ADA Compliance Officer are responsible for final decisions for all grievance appeals involving claims of disability discrimination.

e. <u>Complaints by MNDOC Staff</u>:  The MNDOC shall ensure that complaints by staff who allege violations of the ADA in the secondary education program are promptly reviewed and addressed by appropriate action in accordance with applicable policies and collective bargaining agreements.

11.    <u>Implementation & Dissemination</u>:   Within sixty (60) calendar days of approval by the United States, the MNDOC will adopt and implement the policies, practices, and procedures identified in Paragraph 10.[1]  The MNDOC shall amend, or where appropriate, issue new policies, practices, and procedures—and any related directives, forms, lists, or other documents—for all individual facilities within the MNDOC system, to ensure that they reflect and comply with the changes made pursuant to this Consent Decree.  The MNDOC will disseminate a copy of all approved policies, practices, and procedures to all staff and contractors involved in the secondary education program or in conducting any evaluation or assessment of secondary education program participants' disability-related education needs (collectively, relevant staff and contractors).   The MNDOC will also include information about these policies, practices, and procedures in the Offender Handbook and education orientation materials, and conspicuously post these policies in its education units.  The MNDOC will also incorporate these policies into training for all new relevant staff and contractors within thirty (30) calendar days of hire or retention.

---

[1] The date of implementation of Paragraphs 10 and 12 is subject to the MNDOC's good faith efforts to hire the ADA Compliance Officer contemplated by this Consent Decree.

12.    <u>ADA Compliance Officer and Facility ADA Coordinators</u>:  The MNDOC will hire an agency-wide ADA Compliance Officer.  This individual shall coordinate the MNDOC's efforts to comply with and carry out its responsibilities under Title II and this Consent Decree.

    a.    <u>Facility ADA Coordinators</u>: The MNDOC has designated, and will continue to designate, at least one employee in each of the MNDOC's correctional facilities to serve as the facility's ADA Coordinator.  Each Facility ADA Coordinator will coordinate and have the authority to ensure that their facility complies with and carries out the facility's responsibilities under Title II. The Facility ADA Coordinator shall coordinate as necessary with the Facility ADA Education Coordinator in their facility.

    b.    <u>Facility ADA Education Coordinators</u>:  The MNDOC will designate at least one employee in each of MNDOC's correctional facilities to serve as the Facility ADA Education Coordinator.   Each Facility ADA Education Coordinator will coordinate and have the authority to ensure that their facility complies with and carries out their education department's responsibilities under Title II and this Consent Decree.   The Facility ADA Education Coordinator shall coordinate as necessary with the Facility ADA Coordinator in their facility.

    c.    <u>General Responsibilities</u>: The ADA Compliance Officer, Facility ADA Coordinators, and Facility ADA Education Coordinators shall be responsible for carrying out the MNDOC's ADA responsibilities, including reviewing

12

disability accommodation requests. They may also be consulted during investigation and resolution of kites, complaints, Offender Requests for Modification, grievances, and appeals described in Paragraph 10(d).

13.    <u>Personnel Training</u>:  Within sixty (60) calendar days of receiving approval from the United States of the policies, practices, and procedures required under Paragraph 10 of this Consent Decree, the MNDOC shall submit proposed training materials—including any manuals or written or electronic materials, that are consistent with the provisions of those approved policies, practices and procedure—to the United States for approval, which will not be unreasonably withheld. Within sixty (60) calendar days of receiving approval from the United States of the training materials, and annually thereafter, the MNDOC will provide training to all relevant staff and contractors concerning: Titles II and V of the ADA and disability discrimination in general; GED course, practice test, and exam accommodations; the MNDOC's revised policies, practices, and procedures pursuant to Paragraph 10; the roles, and responsibilities of the MNDOC's ADA Compliance Officer, Facility ADA Coordinators, and Facility ADA Education Coordinators; and this Consent Decree, including the steps that the MNDOC has taken, and will continue to take to ensure that its obligations under this Consent Decree are met.

a.    This training shall be conducted by person(s) with substantive knowledge of Title II of the ADA. The United States shall set forth reasonable minimum qualifications for the trainer(s). Subject to the MNDOC's good faith efforts to secure a trainer that meets these minimum qualifications, the MNDOC will send the United States the name(s), qualifications, and contact

information of the trainer(s) no later than sixty (60) calendar days after the Effective Date of this Consent Decree.  If the MNDOC cannot secure a trainer that meets these minimum qualifications by this date, the Parties will negotiate in good faith to reach a resolution.

b.  The initial training will be conducted live, either in-person or via remote meeting platform, with an opportunity to pose questions to the individual(s) conducting the training at the conclusion of the training session.  Each subsequent training may be conducted by video recording.  The MNDOC will ensure that all new relevant staff and contractors receive the training as a component of new personnel training and orientation.

14.  <u>Student Educational Program</u>: Within sixty (60) calendar days of receiving approval from the United States of the policies, practices, and procedures required under Paragraph 10, the MNDOC shall submit updated education orientation programming materials to the United States for approval, which will not be unreasonably withheld. Within sixty (60) calendar days of receiving approval from the United States of the updated education orientation programming materials, those materials will be utilized within MNDOC's education orientation programming, including to meet its notification requirements included in Paragraph 10(b).  Within sixty (60) calendar days of receiving approval from the United States of the updated education orientation programming materials, the updated education orientation programming materials will also be presented once to current secondary education students who have already completed education orientation.  These education orientation materials will include information concerning:

14

Title II of the ADA and disability discrimination in general; GED course, practice test, and exam accommodations; the MNDOC's revised policies, practices, and procedures pursuant to Paragraph 10; the roles and responsibilities of the MNDOC's ADA Compliance Officer, Facility ADA Coordinators, and Facility ADA Education Coordinators; and this Consent Decree, including the steps that the MNDOC has taken, and will continue to take to ensure that its obligations under this Consent Decree are met.  These materials may include video(s), approved by the United States, and participants shall be provided the opportunity to ask questions of an individual who is knowledgeable about Title II, the GED program, and GED course, practice test, and exam accommodations.

15.   <u>Corrective Action Review</u>:   The MNDOC shall review and document (1) whether any currently incarcerated individuals who have participated in its GED programming since January 1, 2017, and who have not obtained a secondary credential or obtained a secondary credential only after receiving more than three-hundred and ninety (390) instructional hours of GED programming, have disabilities, including reviewing records such as prior school records, medical or mental health records, presentence investigation reports, or other information available to the MNDOC as needed, (2) whether the lack of any accommodations, modifications, or auxiliary aids or services denied them an equal opportunity to benefit from the GED program, and (3) what corrective action(s) should be taken, including but not limited to wage adjustment where the adjusted wage would not exceed the maximum wage available for the individual's current work assignment or the maximum wage available based on the individual's attendance, preference on waiting lists for appropriate programs or assignments, and the provision of

reasonable modifications or accommodations or auxiliary aids or services.  The MNDOC shall provide this review, as well as an overview of: (1) the steps taken to conduct this review; (2) documentation or other evidence considered; and (3) any proposed corrective actions to the United States for approval within one-hundred and twenty (120) calendar days of the Effective Date.  Within thirty (30) calendar days of the United States' approval of the review and proposed corrective actions, the MNDOC shall implement the corrective actions.  Accommodations, modifications, or auxiliary aids or services determined to be necessary for incarcerated individuals currently participating in GED programming shall be temporarily implemented prior to final approval by the United States.

## V.   <u>MONETARY RELIEF</u>

16.    The MNDOC agrees to pay an amount no greater than $78,267.00 for the purpose of compensating individuals identified by the United States who were aggrieved by the MNDOC's actions.  None of the payments provided for in this Consent Decree constitute payment of exemplary or punitive damages.  The United States will provide the MNDOC with the names and total compensation amounts for each aggrieved person.  Within thirty (30) calendar days of receiving this information, the MNDOC will mail a copy of the Complaint in this matter, this signed Consent Decree, the Release of Claims, attached hereto as Attachment A, and instructions for how to accept the MNDOC's payment via certified mail to each aggrieved person.  The MNDOC shall make reasonable efforts to locate a current address for each aggrieved person utilizing MNDOC records and/or data systems MNDOC accesses for business purposes, such as the Statewide Supervision System (S3).  The United States may also provide a current address for each

aggrieved person to assist the MNDOC.  Upon receipt of an aggrieved person's executed Release of Claims and confirmation that the aggrieved person has completed all necessary steps to receive the MNDOC's payment, the MNDOC will send their compensation by an electronic funds transfer or by a check sent certified mail.  The MNDOC will provide the United States with verification of each payment within thirty (30) calendar days after it was processed or sent via mail.  If an aggrieved person submits an executed Release of Claims, properly completes all necessary steps to receive the MNDOC's payment, and requests their compensation from the MNDOC or the United States at any time during the term of this Consent Decree, the MNDOC will process the appropriate payment.

## VI.    <u>MONITORING AND REPORTING</u>

17.    <u>Reporting Requirements</u>:  Beginning three (3) months after the Effective Date and every six (6) months thereafter for the term of this Consent Decree, the MNDOC shall submit written reports (including supporting documentation) to the United States, delineating all steps taken during the reporting period to comply with each substantive provision of this Consent Decree.  Each report shall include the following for the preceding reporting period:

a.  <u>Program Data</u>: A list of every incarcerated individual with a disability who participated in the GED program as well as their Offender ID, current MNDOC facility, the date the individual entered the GED program, the date and scores of all GED practice tests and exams, all information regarding educational program accommodations or modifications (including the date of any request, what was requested, what was approved, and the date of any

MNDOC response to the individual), all information regarding any GED exam accommodations (including the date of any request, what was requested, date the MNDOC submitted the request to GTS, what was approved by GTS, and date of any MNDOC or GTS response to the individual), the date the individual exited the GED program, and the reason for the individual's exit (e.g., obtained GED certificate or released from MNDOC custody).

b. <u>Complaint, Kites, Offender Requests for Modification, Grievances, and Appeals</u>: A copy of every complaint, kite, Offender Request for Modification, grievance, and appeal by an incarcerated individual relating to disability-based discrimination in the GED program or any other issue covered by this Consent Decree, and the MNDOC's response to or resolution of the complaint, kite, Offender Request for Modification, grievance, and appeal.

c. <u>Staff Complaints</u>:  A copy of every complaint by staff related to disability-based discrimination in the GED program, or any other issue covered by this Consent Decree, received by the MNDOC and the MNDOC's response to or resolution of the complaint.

d. <u>Training</u>: For all training and educational sessions required in Paragraphs 11, 13-14, the MNDOC shall submit written reports detailing: the date and time of each training; a copy of the agenda and materials (e.g., handouts,

PowerPoint presentations) used for each training; and the names (and for employees, names and titles) of the individuals who attended the training.

e. <u>All Other Relevant Documents</u>: All other documents requested by the United States relevant to this Consent Decree and to the United States' determination of the MNDOC's ongoing compliance with this Consent Decree.

## VII. __ADDITIONAL TERMS__

18. <u>Notification</u>: All documents and communications required to be sent to the United States under the terms of this Consent Decree shall be sent to the following individuals by e-mail to Christine Kim (christine.kim@usdoj.gov), Matthew Faiella (matthew.faiella@usdoj.gov), and Bahram Samie (bsamie@usa.doj.gov) or by overnight courier to Christine Kim (202-305-0043), Disability Rights Section/Civil Rights Division, 4 Constitution Square, 150 M Street NE / 9th Floor, Washington, DC 20002.  The cover letter shall include a subject line referencing the MNDOC and DJ# 204-39-192.

19. <u>Effective Date and Term</u>: The Effective Date shall be the date that the Court approves and enters the Consent Decree or issues electronic notification that it has done so, whichever is later.  Unless otherwise specified, all time periods designated for an action run from the Effective Date.  This Consent Decree shall remain in effect for three (3) years from the Effective Date.  The Court shall retain continuing and exclusive jurisdiction for the duration of the Consent Decree to enforce the terms of the Consent Decree.  The United States and/or MNDOC may apply to the Court for such further orders as may be necessary for, or consistent with, the enforcement of this Consent Decree.

20.    <u>Reviewing Compliance</u>:  The United States may review compliance with this Consent Decree at any time.  The MNDOC will cooperate fully with the United States' efforts to monitor compliance with this Consent Decree.  The MNDOC shall make facilities, policies, records (including incarcerated individuals' medical records), personnel, and any other reasonably requested information available to the United States to facilitate the United States' monitoring of the MNDOC's compliance with this Consent Decree.  Upon request from the United States, the MNDOC shall make arrangements for the United States to conduct confidential and private telephonic, videophone, or in-person interviews with incarcerated individuals pertaining to this Consent Decree.

21.    <u>Disputes</u>:  If the United States believes that MNDOC has failed to comply in a timely manner with any requirement of this Consent Decree, or that any requirement has been violated, the United States will notify the MNDOC in writing and the Parties will attempt to resolve the issue.  The MNDOC must respond to such notice as soon as practicable but no later than seven (7) calendar days thereafter.  The Parties shall negotiate in good faith to resolve any dispute relating thereto; if the Parties are unable to reach a mutually acceptable resolution within thirty (30) days, the United States may seek court enforcement of compliance with this Consent Decree.  Nothing in this procedure shall prevent the United States or the MNDOC from promptly bringing an issue before the Court when, in the moving Party's view, the facts and circumstances require immediate court attention.  The moving Party must provide written notice and attempt informal resolution for at least fourteen (14) calendar days prior to bringing the issue before the Court.  The

moving Party's written notice and court filing shall explain the facts and circumstances that necessitate immediate court involvement.

22.    Scope:  This Consent Decree does not purport to remedy any violations or potential violations of the ADA or any other federal or state law, other than the violations alleged in above in Paragraphs 1-2, nor does it affect the MNDOC's continuing responsibility to comply with all provisions of the ADA.  This Consent Decree shall have no impact upon the rights or claims of any individual not identified in this Consent Decree who has made, or may make, claims against the MNDOC, even for issues addressed herein. Nothing in this Consent Decree shall preclude the United States from filing a separate action under the ADA, or any other law, for any alleged violation not covered by this Consent Decree.

23.    Entire Agreement:  This Consent Decree contains the entire agreement between the United States and the MNDOC concerning the subject matter described in Paragraphs 1-2, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in Paragraphs 1-2, shall be enforceable.

24.    Interpretation:  This agreement shall be deemed to have been jointly drafted by the Parties.  Any ambiguous language shall be interpreted as to its fair meaning, and not strictly for or against any party.

25.    Modifications:  The time frame for completion of any act required by this Consent Decree may be modified with the mutual written consent of the Parties, except that the termination date may only be extended by Order of the Court.  The United States

will not unreasonably deny requested extensions, if made by the MNDOC in advance of any deadline, and following the MNDOC's due diligence to meet such a requirement.  The Parties acknowledge that such written agreement may be completed by e-mail so long as the e-mail has specific language designed to bind either Party.

26.   <u>Severability</u>:  If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, the other terms of this Consent Decree shall nonetheless remain in full force and effect.

27.   <u>Binding</u>:  This Consent Decree shall be binding on the United States and MNDOC and its agents, employees, officers, and contractors.

28.   <u>Successor Liability</u>:  This Consent Decree is binding on MNDOC and its successors, including any successor Commissioner of the Department of Corrections.

29.   <u>Non-Waiver</u>:  Failure by the United States to seek enforcement of this Consent Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to any instances or provisions.

30.   <u>Litigation Holds</u>:  The United States and the MNDOC agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in Paragraphs 1-2.  To the extent that any of these Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraphs 1-2, the Party is no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves any Party of any other obligations imposed by this Consent Decree.

31. <u>Fees and Costs</u>:  Each of the Parties to this Consent Decree will bear its own costs and attorney's fees incurred in connection with this litigation and Consent Decree.

32. <u>Publicly Available</u>:  A copy of this document will be made available to any person by the MNDOC on request.

33. <u>Authority</u>:  The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Consent Decree.

34. <u>Counterparts:</u>  This Consent Decree may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same Consent Decree.  Electronic or facsimile signatures are acceptable.

Dated: February 14, 2023

Respectfully submitted,

ANDREW M. LUGER
United States Attorney
District of Minnesota

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief

/s/ Bahram Samie
BAHRAM SAMIE (#392645)
Assistant United States Attorney
United States Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Bahram.Samie@usdoj.gov

/s/ Christine Kim
JENNIFER K. MCDANNELL
Deputy Chief
CHRISTINE KIM (DCRN 1044186)
Trial Attorney
MATTHEW FAIELLA (NYRN 4437711)
Trial Attorney

Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20530
Phone: 202-305-0043
Fax: 202-307-1197
Christine.Kim@usdoj.gov
Matthew.Faiella@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

**FOR THE MINNESOTA DEPARTMENT OF CORRECTIONS:**

<u>/s/ Paul Schnell</u>
PAUL SCHNELL
Commissioner
Minnesota Department of Corrections
1450 Energy Park Drive, Suite 200
St. Paul, MN 55108
651-361-7226 (telephone)


<u>2/13/23</u>
Date


## ORDER

IT IS SO ORDERED this 7th day of March, 2023.

<u>s/ Jerry W. Blackwell</u>
JERRY W. BLACKWELL
___UNITED STATES DISTRICT COURT JUDGE

**ATTACHMENT A**
**RELEASE OF CLAIMS**

For and in consideration of acceptance of the relief offered to me by the Minnesota Department of Corrections ("MNDOC"), of compensation in the amount of $_____ (print amount), pursuant to a Consent Decree between the MNDOC and the United States of America, arising out of Civil Action No. 0:23-cv-00367-JWB-ECW:

I, _____ (print name), hereby release and forever discharge the MNDOC and its current, past, and future officers, directors, employees, and agents, of and from any legal and/or equitable claims arising out of the facts identified in the United State' Complaint filed in the United States District Court for the District of Minnesota, Civil Action No. 0:23-cv-00367-JWB-ECW, and any other claims, known or unknown, relating to my request(s) for accommodations or modifications for any General Educational Development (GED) course, practice test, and exam provided by the MNDOC preceding the date of this Release. Excluded from this Release are any rights and claims that cannot be waived by law.

This Release constitutes the entire agreement between myself and the MNDOC with regard to the claims identified above, without exception or exclusion.

I acknowledge that a copy of the Consent Decree has been made available to me. By signing this Release, I acknowledge that I have been provided the opportunity to review the Consent Decree with an attorney of my choosing, and that I understand that I am solely responsible for paying any applicable federal, state and local taxes I owe as a result of receiving payment under this Consent Decree.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF, AND I EXECUTE THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signature: _____   Date: _____

Full Name: _____

Mailing Address: _____

26